Honorable Betti L. Sheldon State Senator, 23rd District P. O. Box 40423 Olympia, WA 98504-0423
Dear Senator Sheldon:
By letter previously acknowledged, you have requested an opinion on the following question:
May a housing authority organized under RCW 35.82 administer contracts for assistance payments to persons of low income in accordance with section 8 of the United States Housing Act of 1937, as amended by Title II, section 201, of the Housing and Community Development Act of 1974 (Public Law 93-383)[1] for housing agencies located in other states, by agreement with the housing agencies in question?[2]
 BRIEF ANSWER
Under the Interlocal Cooperation Act, RCW 39.34, a housing authority may administer contracts in accordance with section 8 of the federal housing act for housing agencies located in other states, by interlocal agreement, provided that two conditions are satisfied. First, the other public agencies entering into the agreement must have authority to administer such contracts. Second, the other public agencies must have authority (based on tribal, state, or federal law) to enter into the agreement.
 ANALYSIS
RCW 35.82.030 authorizes any city or county in Washington to create a public body known as a "housing authority" based on finding a need for safe and sanitary housing in the jurisdiction. Once created, a housing authority is an independent public body governed by commissioners (who are appointed by the city mayor or by the county governing body). RCW 35.82.040-.060. RCW 35.82.070 sets forth the powers of a housing authority, which relate primarily to acquiring, constructing, and operating projects, together with ancillary authority to acquire and manage property, invest and manage funds, and similar powers incidental to the operation of housing projects. RCW 35.82.070(14) specifically authorizes a housing agency to "administer contracts for assistance payments to persons of low income in accordance with section 8 of the United States Housing Act of 1937, as amended by Title II, section 201 of the Housing and Community Development Act of 1974, P. L. 93-383." RCW35.82 contains a number of other provisions defining the powers and responsibilities of housing authorities that are beyond the necessary scope of this discussion.
Your question concerns the power of a housing authority to enter into an agreement to provide such contract administrative services on behalf of a housing authority (or other federal, state, or local agency providing such services) in another state. Materials enclosed with your request suggest that a housing authority may lawfully perform such services based on either (1) language in RCW 35.82 itself, or (2) the supplementary authority granted in RCW 39.34, the Interlocal Cooperation Act.
The materials you have enclosed with the opinion request suggest, first, that a housing authority may serve as a section 8 contract administrator in other states because subsection (14) of RCW 35.82.070, unlike other subsections of the same statute, does not contain the limiting phrase "within its area of operation."[3] The materials also argue that the services in question are "proprietary" and not governmental in nature, and that municipalities are generally free to conduct proprietary activities outside their jurisdictional boundaries.[4] While there is some case authority on these points, the general rule is that a municipal corporation has no implied authority to furnish the services for which it was formed on an extraterritorial basis. See, e.g., AGO 1976 No. 23, at 3 (enclosed) and the cases cited therein. Since housing authorities are created by cities or counties to provide very specific services for the people in their "parent" jurisdictions, we cannot conclude that a housing authority organized under RCW 35.82 could act as a free-standing entrepreneur, performing various services far outside its area of operation, with no reference to any joint or cooperative undertaking with another agency.[5]
It is unnecessary to express an opinion on the extent of a housing authority's powers to perform extraterritorial services under RCW 35.82, because here there is a clear alternative analysis to support what the housing authorities propose to do. The Interlocal Cooperation Act, codified as RCW 39.34, was originally enacted in 1967. Laws of 1967, Reg. Sess., ch. 239. The Act defines the term "public agency" to mean
 any agency, political subdivision, or unit of local government of this state including, but not limited to, municipal corporations, quasi municipal corporations, special purpose districts, and local service districts; any agency of the state government; any agency of the United States; any Indian tribe recognized as such by the federal government; and any political subdivision of another state.
RCW 39.34.020(1). The Act further provides that:
 Any power or powers, privileges or authority exercised or capable of exercise by a public agency of this state may be exercised and enjoyed jointly with any other public agency of this state having the power or powers, privilege or authority, and jointly with any public agency of any other state or of the United States to the extent that laws of such other state or of the United States permit such joint exercise or enjoyment.
RCW 39.34.030(1). This section sets forth the substantive and procedural prerequisites by which public agencies may enter into agreements for joint or cooperative action. RCW 39.34.030(3)(6). Yet another section of the Act also provides that "[a]ny one or more public agencies may contract with any one or more other public agencies to perform any governmental service, activity, or undertaking which each public agency entering into the contract is authorized by law to perform". RCW 39.34.080. Finally, the Act makes it clear that the authority granted in it is supplemental to any authority granted elsewhere by state law. RCW 39.34.100.[6]
It is clear from the foregoing language and from the language providing for the establishment of housing authorities that a housing authority created under Washington law is a "public agency" for purposes of RCW39.34. Therefore, it is also clear that a Washington housing authority may enter into an agreement with a public agency — that is, another agency organized under Washington law or an agency of another state, of the United States, or of a federally recognized Indian tribe — to perform jointly one or more of the services which housing authorities may otherwise perform under RCW 35.82, including the administration of contracts for assistance payments under section 8 of the federal housing act as referenced in RCW 35.82.070(14).[7]
Based on the material enclosed with the opinion request, we have considered two possible objections to the proposition that a Washington housing authority could, by contract, perform such contract administration for a housing agency in another state. The first objection is that such activity would constitute an unlawful "extraterritorial" exercise of the Washington housing authority's powers. In our opinion, the Interlocal Cooperation Act itself supplies authority to act "extraterritorially" to the extent necessary to carry out the agreement. Suppose, for instance, a Washington housing authority enters into an agreement with a housing agency in another state for the joint or cooperative exercise of some power both are otherwise authorized to perform. If the two agencies agree that the Washington housing authority will administer contracts for the other agency, the Washington authority becomes the agent of the other agency. To the extent the agreement leads the Washington agency to "operate" in the other state, the Washington agency acts as the agent of the agency in the local state, not on its own behalf.[8] By the same token, an agreement might provide for an agency of some other state (or of the federal government, or of a tribe) to perform services in Washington. By virtue of the joint agreement (and to the extent the agreement so provides), the parties to the agreement act cooperatively within the territory in which each is legally authorized to operate.[9]
We do not read the Interlocal Cooperation Act as requiring each signatory to an interlocal agreement to have pre-existing authority toact extraterritorially. Most municipal corporations and other local agencies are intended to exercise their functions within defined geographical limits, and they are not authorized to invade one another's territories by offering to apprehend criminals, fight fires, provide housing, or furnish sewer service outside the areas they were created to serve.
We considered an analogous issue in AGLO 1978 No. 18 (enclosed), in which we were asked if the State Criminal Justice Training Commission could provide training to tribal police officers through an interlocal agreement with the tribes. The commission in question had clear statutory authority to train law enforcement officers but lacked express authority to train tribal officers. We reached the opinion that the Interlocal Cooperation Act does not require each party to an agreement to have pre-existing authority to exercise its powers in the specific context contemplated by the agreement. Such a narrow reading, we said "would, for all practical purposes, render [the Interlocal Act] a vain and useless act." AGLO 1978 No. 18, at 6. Thus, we concluded that parties to an agreement were only required to have the general authority in question (training police officers, or administering "Section 8" contracts).
We have also considered whether a Washington housing authority may operate within the boundaries of another jurisdiction without being licensed or authorized to "do business" in the other jurisdiction. This suggestion, again, fails to consider the effect of the interlocal agreement in authorizing joint or cooperative action. The administration of a state or federal program jointly with other agencies would not typically be considered the conduct of a "business" requiring business licenses and similar regulations. As a general matter, it seems unlikely that a state allowing or encouraging interstate agreements would simultaneously impede them by regulating out-of-state housing authorities as if they were private commercial operations. However, we recognize that some states might impose procedural conditions on the performance of a given service or program which cannot be anticipated in this broad overview of the issue.
We conclude that a Washington housing authority may, by entering into an interlocal agreement meeting this state's prerequisites, agree to perform Section 8 contract administration for other housing agencies, whether the other agencies are located within or outside the boundaries of Washington. This conclusion is based of course on the assumption that the other parties to the agreement have authority to perform the same service and the authority to enter into the agreement.
We trust that the foregoing information will prove useful.
Sincerely,
 JAMES K. PHARRIS Senior Assistant Attorney General
[1] RCW 35.82.070(14) expressly authorizes housing authorities to administer contracts relating to "section 8" of the federal act cited. This opinion analyzes the housing authority's state law authority and does not discuss or interpret the underlying federal law.
[2] Responding to a previous request, we provided you with an informal opinion on the same question (letter from James K. Pharris, Senior Assistant Attorney General, to Betti Sheldon, State Senator (April 27, 2004)). You have forwarded to us a copy of a letter from Deborah Lear, Deputy Director, Office of Housing Assistance Contract Administration Oversight, U.S. Department of Housing and Urban Development, directed to Clarence Nelson of the Housing Authority of the City of Bremerton, questioning the conclusions of the April 27 opinion and requesting that certain matters be addressed by October 4, 2004. Among other things, the Lear letter requests "an official opinion" from the Washington Attorney General concluding that housing authorities have authority to "administer section 8 contracts extraterritorially." Unfortunately, we did not receive this letter until September 23. In response, we have done our best to expedite this official opinion. This opinion is limited to a Washington housing authority's powers under state law and does not extend to an analysis of related federal laws or speculate as to the law in other states.
[3] The term "area of operation" is statutorily defined and depends on whether a housing authority has been created by a city or a county. A city housing authority's area of operation includes the territory within the city and within five miles of the city boundaries, while a county authority's area of operation includes all of the county except land within the territorial boundary of a city. RCW 35.82.020(6).
[4] We note that RCW 35.82.070(13) authorizes a Washington housing authority to exercise its powers within the boundaries of any city, town, or county if that jurisdiction adopts a resolution "declaring . . . a need for the authority to function in such territory." While this state law provision does not extend to jurisdictions located outside the state, it indicates that the Legislature has granted housing authorities broad extraterritorial powers with the consent of the "host" jurisdiction. Furthermore, this language is evidence that extraterritorial operations are, as a general matter, consistent with state policy.
[5] We do not reach the question whether a housing authority's functions are "proprietary" or "governmental" in nature, or whether this would affect the power of a housing authority to perform those services extraterritorially. We would not lightly infer that the Legislature intended that even "proprietary" services would be offered far beyond the authority's defined base of operation.
[6] The Act does not confer any power or privilege prohibited by the state constitution or by federal law. RCW 39.34.110. However, we are unaware of any state or federal law restricting a housing authority from administering housing contracts, either pursuant to its own state-law functions or to agreements with other public agencies which meet the procedural requirements of RCW 39.34.
[7] Our analysis is based on the assumption that a Washington housing authority will enter into an interlocal agreement with one or more other public agencies, organized under the laws of this state or of another jurisdiction, defining the terms under which the parties will exercise their powers jointly. The Lear letter seems to suggest that no interlocal agreement is contemplated between a Washington housing authority and an authority located elsewhere. Obviously, our analysis depends on the existence of an agreement with some other public agency. Our state law permits an agreement with a federal agency, for instance, if the federal agency has the power to enter into the agreement and wishes to do so.
[8] Our Interlocal Cooperation Act makes it clear that performance of a Washington public agency's obligations and responsibilities may be satisfied by the acts performed pursuant to a joint or cooperative undertaking with other public agencies. RCW 39.34.030(5).
[9] A crucial prerequisite to an interlocal agreement is that each party must independently have the authority to enter into the services which are the subject of the agreement, as well as the authority to enter into the agreement itself. Thus, obviously, a Washington housing authority cannot perform services within the boundaries of another jurisdiction unless the laws of the other jurisdiction permit the arrangement.